**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL WALKER,

      Petitioner,

v.                                      Case No. 8:14-cv-2382-T-36TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

    Michael Walker, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Manatee County conviction.  (Dkt. 1.)  In the response (Dkt. 13), Respondent agrees that the petition is timely.  Walker filed a reply. (Dkt. 16.)  Upon review, Walker's petition will be denied.

**PROCEDURAL HISTORY**

    Walker was convicted after a jury trial of second degree murder and armed burglary of a dwelling.  (Dkt. 15, Ex. 3.)  He was sentenced to concurrent terms of 50 years in prison.  (Dkt. 15, Ex. 5.)  The state appellate court affirmed his armed burglary conviction without comment but reversed and remanded for a new trial on the second degree murder charge.  *Walker v. State*, 46 So.3d 160 (Fla. 2d DCA 2010).  Upon remand, the State dismissed the second degree murder charge.  (Dkt. 15, Ex. 9.)  Walker filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 challenging his armed burglary conviction.  (Dkt. 15, Ex. 17.)  The state court summarily denied his motion, and

the state appellate court *per curiam* affirmed. (Dkt. 15, Exs. 20, 22.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The state appellate court affirmed the denial of postconviction relief without discussion. The court's decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## INEFFECTIVE ASSISTANCE OF COUNSEL

A claim of ineffective assistance of counsel is analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, Walker must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Walker must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, Walker must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because review is "doubly" deferential to counsel's performance and the state court's ruling. *Richter*, 562 U.S. at 105. *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA."). If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

## DISCUSSION

**Ground One**

Walker alleges that the trial court's refusal to give his requested independent act instruction to the jury violated his federal constitutional rights to due process and a fair trial.

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate

state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Walker's claim is unexhausted because he did not present its federal nature on direct appeal. (Dkt. 15, Ex. 6, pp. 31-34.) Walker cannot return to state court to file a successive direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (a defendant must appeal a final judgment within 30 days following rendition of a written order imposing sentence). As a result, Walker's claim is procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Walker does not argue that the fundamental miscarriage of justice exception applies to overcome the default. He asserts in his reply that he has established applicability of the cause and prejudice exception because his appellate counsel was ineffective for not presenting the federal nature of the claim on appeal.

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). Ineffective assistance of counsel can constitute cause. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). But the petitioner must first raise the allegation of ineffective assistance in state court. *See id.* ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim . . . [that must] be first raised in state court.") (emphasis in original). However, Walker did

not file a state habeas petition under Florida Rule of Appellate Procedure 9.141(d) alleging ineffective assistance of appellate counsel. Thus, he failed to meet *Carpenter*'s requirements, and the allegation of ineffective assistance of appellate counsel that Walker offers to establish cause is itself unexhausted and procedurally defaulted.[1] As Walker has not established cause and prejudice to overcome the default of Ground One, this claim is barred from review.

**Ground Four**

The Second District Court of Appeal summarized the facts of Walker's case:

The charges against Walker stem from the burglary of the home of Roberta and Daniel Ramsey. The Ramseys returned home while Walker and his codefendant, Anthony Lewis, were committing the noontime burglary. When the Ramseys saw Lewis' car backed up to their garage door, Mr. Ramsey parked his truck so as to block Lewis' car. Mr. Ramsey then exited his vehicle, armed himself with his hunting knife still in its sheath, and confronted Walker; Lewis was still inside the house at the time. When Lewis came outside, he said to Mr. Ramsey, "I've got something I can take care of you with." Lewis removed from his pocket a pistol that he had taken from the Ramseys' home, and he fatally shot Mr. Ramsey.

*Walker*, 46 So.3d at 160.

At trial, Roberta Ramsey testified that Daniel Ramsey "shook" his knife at Walker, but backed away and did not approach him. (Dkt. 15, Ex. 2, Vol. IV, pp. 509-11, 531-32.) At her deposition, however, she testified that her husband "confronted" Walker "three times." (*Id.*, p. 533-34.) Robert Holbrook, a garbage collector who was working on the Ramseys' street, testified at trial that he saw Walker exiting the Ramsey home and opening

---

[1] *Martinez v. Ryan*, 566 U.S. 1 (2012) outlines circumstances in which a procedural default of a claim of ineffective assistance of trial counsel may be excused through the cause and prejudice exception. Walker appears to assert that the default of his ineffective assistance of appellate counsel claim may be overcome pursuant to *Martinez*. His argument is misplaced. *See Davila v. Davis*, __ U.S. __, 137 S.Ct. 2058 (2017) (declining to extend *Martinez* to defaulted claims of ineffective assistance of appellate counsel).

the trunk of a car parked in the driveway. (*Id.*, pp. 474-75.) But at his deposition, he stated

that he did not see people around the car. (*Id.*, p. 476.) Holbrook testified at trial that he

did not initially provide all the information he knew because he was afraid of retaliation.

(*Id.*, pp. 474-75.)

Walker contends that trial counsel was ineffective in failing to request a jury

instruction that these witnesses' prior inconsistent statements were not to be considered

as substantive evidence. The state court rejected Walker's claim:

> Defendant argues that his counsel was ineffective for failing to ask the Court to instruct the jury that prior inconsistent statements can only be used to impeach a witness and are not substantive evidence. Specifically, Defendant asserts that such an instruction should have been given with respect to prior inconsistent statements that were used to impeach witnesses Robert Holbrook and Roberta Ramsey.
>
> Prior inconsistent statements that are not under oath are only admissible for impeachment purposes and cannot be used as substantive evidence. *See Ivery v. State*, 548 So.2d 887 (Fla. 2d DCA 1989). However, prior inconsistent statements that are made under oath are admissible both for impeachment *and* as substantive evidence. *See Fla. Stat.* 90.801(2)(a); *Moore v. State*, 452 So.2d 559 (Fla. 1984).
>
> In this case, both Mr. Holbrook and Mrs. Ramsey were impeached with their prior deposition testimony, which was given under oath. Therefore, it could be used both for impeachment and as substantive evidence. Moreover, the prior inconsistent statements that were introduced helped, rather than harmed, Defendant. Specifically, the prior inconsistent statement of Mr. Holbrook was that he never saw Defendant or anyone else coming out of the victim's house or standing near the blue car that was seen. Therefore, this supports Defendant's own statement during his interview that he never went into the house. Likewise, the only prior inconsistent statement that was introduced from Roberta Ramsey was that her husband, the victim, had confronted the Defendant with a knife three times. This statement supports the defendant's argument that the victim had been shot in self defense. Therefore, because the instruction would have been inappropriate and the statements actually helped Defendant, the Court finds that counsel was not ineffective, and Ground Three is denied.

(Dkt. 15, Ex. 20, pp. 11-12) (footnotes omitted).

This Court must defer to the state court's determination that Walker's proposed instruction was not an accurate statement of Florida law. *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Thus, Walker has not shown that counsel was ineffective in failing to request the proposed jury instruction. *See Fondren v. Comm'r, Ala. Dep't of Corr.*, 568 Fed. App'x 680, 686 (11th Cir. 2014) ("It is axiomatic that if an instruction was not warranted by the facts established at trial, then a failure to request such instruction or object to its absence cannot constitute ineffective assistance of counsel."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."). Finally, as the state court pointed out, the witnesses' prior statements actually supported Walker's arguments. As Walker fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim, he is not entitled to relief on Ground Four.

**Ground Seven**

Walker alleges that trial counsel was ineffective for not challenging Robert Holbrook's proffered testimony. The state court rejected Walker's claim:

> Defendant asserts that his counsel was ineffective for failing to challenge the proffered testimony of witness Robert Holbrook. Although Defendant asserts that counsel "waived" her objection to Mr. Holbrook's testimony, the record paints a different picture. In fact, when defense counsel became aware that Mr. Holbrook had previously lied in his depositions because "he was scared," she immediately moved the Court to limit the effects of this statement. As a result, the court received a proffer of the witness's testimony before he was permitted to testify, and the State was required to limit its questioning of the witness only to elicit testimony that was necessary and not unreasonably prejudicial. Therefore, based on its review of the record, the Court concludes that counsel was not deficient in her treatment of the testimony of Mr. Holbrook. Moreover, upon review of Mr. Holbrook's trial testimony on this point, the Court concludes that there was nothing objectionable about Mr. Holbrook's statement. Therefore, based on the foregoing, it cannot be said that counsel was ineffective, and this ground is denied.

(Dkt. 15, Ex. 20, pp. 15-16) (footnotes omitted).

The record supports the state court's decision. When he spoke to the prosecutor shortly before trial, Holbrook for the first time stated that he saw Walker exiting the Ramsey house. (Dkt. 15, Ex. 2, Vol. IV, p. 382.) He indicated that had been afraid to provide this information earlier because he understood that Walker and Lewis attempted to have Roberta Ramsey killed, and he thought they might "kill another man." (*Id.*, p. 383.) As the state court noted, after counsel moved to exclude this part of Holbrook's explanation, Holbrook was permitted to give limited trial testimony that he failed to disclose information at his deposition because he was afraid of retaliation due to the events. (*Id.*, pp. 383-84, 386-87, 465-68, 474-75.) He testified:

Q      [ ] Now, did you give a deposition at some point in this case?

A      Yes, sir.

Q     Did you tell the whole truth at that time?

A     No, sir.

Q     And why did you leave out the bit about Mr. Walker coming out of the house?

A     I was in fear of retaliation.

Q     Because of what had happened at the house, at the Ramsey house?

A     Yes, sir.

(*Id.*, pp. 474-75.)

Furthermore, Walker has not shown that counsel was ineffective for failing to object on the basis that this testimony suggested Walker tampered with the witness and suborned perjury. No part of the above testimony suggested that Walker took such action. Accordingly, the record supports the state court's finding that "there was nothing objectionable about Mr. Holbrook's statement." Walker has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.[2] He is not entitled to relief on Ground Seven.

**Ground Six**

Walker argues that trial counsel was ineffective in failing to file a motion to suppress James Dozier's out-of-court identification of Walker. The state court denied this claim:

> Defendant contends that his counsel was ineffective for failing to move for the suppression of the out-of-court identification of Defendant made by witness James Dozier. In support of this contention, Defendant argues that the procedure used by the police was inherently suggestive.

---

[2] Walker asserts that counsel was ineffective for failing to "object to the prosecutor's highly prejudicial comments." (Dkt. 1, p. 20.) It appears from his reply that he intends to reiterate his claim that counsel should have objected to a portion of the prosecutor's closing argument concerning Holbrook. This claim is considered in Ground Three, *infra*.

Even if the Court assumes that the identification by James Dozier should have been excluded, the Court finds that this exclusion would have had no impact on the outcome of Defendant's trial. The testimony of Mr. Dozier was extremely limited and simply placed Defendant and a blue car at the scene of the crime. Accordingly, this testimony simply corroborated Defendant's own admission to law enforcement officers that he had, in fact, been at the victim's house standing near the car. Moreover, the defense at trial was never one of misidentification; instead, the defense argued that although Defendant had been at the scene with his accomplice, the murder of the victim had been an independent act of the accomplice of which Defendant was not involved. Therefore, for both of these reasons, Defendant was not prejudiced by counsel's alleged failure to exclude the identification made by Mr. Dozier, and Ground Five is denied.

(Dkt. 15, Ex. 20, p. 15.)

Dozier, the Ramseys' neighbor, testified at trial that he drove by and saw Walker outside the home standing near a car that was backed towards the garage. (Dkt. 15, Ex. 2, Vol. IV, pp. 500-01.) He testified that police later drove him to another location, where he identified Walker. (*Id.*, pp. 501-02.)[3]

An out-of-court identification is subject to exclusion if the identification procedure was unduly suggestive such that it created a substantial risk of misidentification. *Neil v.*

---

[3] Dozier testified:

Q. All right. And I'm just showing you what's already been received [as] State's 4A through C. Is that the man you saw that day?

A. Yep.

 . . .

Q. [ ] And at some point that afternoon did the police drive you over to Palmetto?

A. Yes.

Q. And at that time did you see the man that you've identified in these photographs?

A. Yes.

(Dkt. 15, Ex. 2, Vol. IV, pp. 501-02.) Another witness, crime scene technician Jason Smith, testified that State's Exhibits 4A through 4C depicted Walker. (*Id.*, pp. 413-15.)

*Biggers*, 409 U.S. 188, 199 (1972); *United States v. Walls*, 237 Fed. App'x 599, 601 (11th Cir. 2007). Assuming that counsel should have objected on this basis, however, Walker has not shown prejudice. Even if Dozier's identification had been excluded, the jury heard through other evidence, including Walker's own admissions to police, that he was outside of the Ramseys' home. (Dkt. 15, Ex. 2, Vol. IV, pp. 473-74, 506-07, 572, 574.) Because Walker has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim, he is not entitled to relief on Ground Six.

**Ground Three**

Walker argues that trial counsel was ineffective in failing to object to improper and prejudicial remarks by the prosecutor during closing argument.

Closing argument is meant to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). *See also McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").

Furthermore, even if a prosecutor's comments were improper, to obtain relief, a petitioner must show that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). *See also Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no

different, the proceeding cannot be said to have been fundamentally unfair.").

Walker first argued that counsel was ineffective for not objecting to the prosecutor's improper remarks about his credibility and Roberta Ramsey's credibility. The state court denied this claim:

### 1. Closing Arguments Regarding Witness Mrs. Ramsey

In his first argument, Defendant claims that his counsel should have objected when the prosecutor compared the credibility of the State's witness Roberta Ramsey to that of Defendant. In this regard, the prosecutor asserted, "In a credible [sic] contest between Roberta Ramsey and Mr. Walker's statement, she wins hands down, because his statement is riddled with inconsistencies and falsehoods." In addition, the prosecutor noted that Defendant's statement that the victim tried to stab him while he was sitting in the car was "[i]nconsistent with Roberta Ramsey's testimony who is far more credible than his statement." Finally, Defendant also takes issue with the prosecutor's assertion that "only Mrs. Ramsey's version makes sense. And of course who would you expect to be telling the truth, the innocent victim or the burglar?"

As the State noted in its response, "an attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006). Further, in *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987), the Supreme Court of Florida held, "When counsel refers to a witness or a defendant as being a 'liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration." Likewise, it is not improper for a prosecutor to ask the jury to consider what motive a witness would have to lie. *Valentine v. State*, 98 So. 3d 44, 56 (Fla. 2012).

Accordingly, each of the statements here, when taken in context, were conclusions that could reasonably be drawn from the evidence. The prosecutor did not simply offer his opinions, but instead, offered countless facts drawn from the evidence that supported his assertions about the credibility of the witnesses. Therefore, because the comments are not improper, counsel was not deficient for failing to object. Likewise, in light of all of the evidence presented, even if the prosecutor's comments were objectionable, the Court's confidence in the outcome of the proceeding is not

undermined.

(Dkt. 15, Ex. 20, pp. 8-9) (footnotes omitted).

Walker has not shown that counsel was ineffective for failing to object to the comments. As the state court noted, and as addressed above, a prosecutor may argue the inferences he believes the jury should draw from the evidence. *See Johns*, 734 F.2d at 663. *See also United States v. Sosa*, 777 F.3d 1279, 1297 (11th Cir. 2015) ("Prosecutors have a duty to refrain from commenting on their personal views on a defendant's guilt and the evidence" but "may suggest what the jury should find from the evidence before it.") (citations omitted). This includes arguments about witness credibility, so long as such arguments do not amount to vouching. "The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case; rather it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). *See also United States v. Lopez*, 590 F.3d 1238, 1257 (11th Cir. 2009) (A prosecutor is "permitted to comment on the credibility of her own witnesses without personally vouching for witness's credibility or bolstering the witness's credibility through the government's reputation.").

Here, the prosecutor did not personally vouch for Roberta Ramsey's credibility or use the prestige of the government to do so, nor did he suggest that evidence not presented to the jury established her credibility. Furthermore, the prosecutor did not impermissibly present his personal opinion of Walker's credibility. As the state court pointed out, the prosecutor argued that conclusions about credibility could be drawn from the evidence. He made the identified remarks while detailing the evidence that he asserted

was relevant to the witnesses' credibility, including the inconsistencies in Walker's statement and the circumstances of the offense. (Dkt. 15, Ex. 2, Vol. V, pp. 675-82.)

Finally, even if counsel should have objected, as the state court found, Walker was not prejudiced. Considering the trial as a whole, including the State's evidence of guilt and the court's instructions to the jury,[4] the prosecutor's comments did not so infect the trial with unfairness as to deny Walker due process. *See Darden*, 477 U.S. at 181.

Walker next argues that counsel was ineffective in failing to object to the prosecutor's statements about Robert Holbrook. He claims that the statements improperly commented on Holbrook's credibility and motive, involved matters not in evidence, and suggested that Walker engaged in witness tampering. The prosecutor stated:

> Let's look at [Walker's] repeated assertion he never went inside the house. Well, that's contradicted by Robert Holbrook who saw him coming out of the house. Now, Mr. Holbrook lied in his deposition when he said he didn't see that and he told you what his motive was, he's scared because of what happened to the Ramseys. He's scared. He doesn't want to get involved. And certainly for him to say that he saw Mr. Walker coming out of the house, that's going to insure his involvement in this case. It's going to insure he's going to be called as a witness. And when he met with me Friday to talk about his testimony, he apparently thought that obviously he was going to be involved anyway, so he came clean. But he told you it wasn't because I said, hey, I know that you know more than you're telling me; you better tell me the truth now. It wasn't because of that. Because, as he told you, he simply volunteered this.

> There are several facts that corroborate Mr. Holbrook's testimony, and we'll go over those. But let's first ask the question, if he was lying now at trial when he sees Mr. Walker coming out of the house, what's his motive? For every lie, I submit to you, there must be a motive. If there is no motive to lie, there is no reason to believe that a given statement is untruthful. Consider Mr. Holbrook's position last Friday when he first came forward with this

---

[4] The court instructed the jury that what the attorneys said in closing arguments was not evidence. (Dkt. 15, Ex. 2, Vol. V, p. 669.) The court also provided the jury with instructions for evaluating the reliability of the witnesses' testimony based on specific factors. (*Id.*, pp. 743-44.) "[J]urors are presumed to follow the court's instructions." *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).

information. If he sticks to his original story that he saw less than he now testifies, who is going to dispute him? Nobody knows any different. The safest course for him in terms of his self-interest is to say, just like I told you in the deposition, this is what I saw. By admitting that he had seen more than he originally stated, he's actually putting himself in jeopardy of being charged with perjury. And that's an indication of his credibility, that he was willing to risk criminal jeopardy in order to tell the truth, and the whole truth. And of course, his testimony that he sees Mr. Walker coming out of the house is corroborated by so many facts.

(Dkt. 15, Ex. 2, Vol. V, pp. 682-83.)

The state court rejected Walker's claim:

**2. Closing Arguments Regarding Witness Mr. Holbrook**

Defendant next alleges counsel was deficient for failing to object to the State's closing argument that witness Robert Holbrook lied in his deposition, where he did not originally admit to seeing Defendant at the scene, because Mr. Holbrook was scared. The State also argued that Mr. Holbrook was not lying at trial because he had no motive to lie.

As discussed above, it is not improper for a prosecutor to comment on a witness's credibility, or to ask the jury to consider the witness's motive, so long as these comments are based on the evidence. Accordingly, when the comments here are taken in context, it is clear that they are conclusions derived from the facts in the evidence. Therefore, because there was nothing objectionable about these comments, counsel was not deficient.

(Dkt. 15, Ex. 20, p. 9) (footnote omitted).

As addressed above, the prosecutor may argue about a witness's credibility. *See Hernandez*, 921 F.2d at 1573. A prosecutor may also argue about a witness's lack of motive to lie. *See id.* ("The prosecutor may not vouch for witnesses but may still 'argue that the fair inference from the facts presented is that a witness had no reason to lie.'") (quoting *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir. 1984)). The prosecutor did not act improperly in arguing that the jury should infer from the evidence that Holbrook had no motive to lie when it would have been in his own interest not to reveal new details after

providing a sworn deposition.  Accordingly, the record supports the state court's conclusion that counsel was not ineffective.  Furthermore, Walker fails to show prejudice as a result of counsel's failure to object to the identified statements.  Considered in the context of the entire trial, even if the prosecutor's comments were improper, they did not so infect the trial with unfairness as to deny Walker due process.  *See Darden*, 477 U.S. at 181.

Finally, Walker argues that the prosecutor made statements that improperly shifted the burden of proof, brought up Walker's right to remain silent, and contained improper "golden rule" arguments.  The state court rejected this portion of Walker's claim:

### 3.  Closing Arguments Regarding Defendant's Statements

Finally, Defendant alleges that comments made regarding his statement to police and omission from that statement were improper comments on his right to remain silent, were improper golden rule arguments, or impermissibly shifted the burden of proof.

Defendant specifically takes issue with the comment that Defendant "is clearly withholding information that is not favorable to himself.  Mr. Walker is following the implicit rule of someone who has been confronted by an authority figure about some misdeed, and that rule is that he's only going to admit what he can't deny and he is not going to – and he's going to deny what he cannot afford to admit."  Defendant also criticizes the prosecutor's statement that "[i]f [Defendant] had been stabbed, he certainly would have told the detectives that to support his self-defense claim."  Defendant argues that his counsel should have objected to these statements because they were comments on his right to remain silent and they improperly shifted the burden to him.

As an initial matter, the Court notes that when a defendant asserts an affirmative defense, like self defense, the State is permitted to comment on the defendant's failure to produce evidence.  *See Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991) (recognizing that "this Court has applied a narrow exception to allow comment [on the defendant's failure to produce evidence] when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state").  Accordingly, because Defendant asserted in this case that the victim was shot in self defense after he attacked Defendant and his accomplice with

a knife, it was not improper for the State to comment on Defendant's failure to discuss this alleged attack. Moreover, when a defendant is read his *Miranda* rights and chooses to give a statement to police officers, a prosecutor's comments about things that were omitted from that statement cannot infringe on the defendant's right to remain silent, because he has waived that right. *See Wray v. State*, 639 So. 2d 621, 624 (Fla. 4th DCA 1994).

Defendant takes further issue with the State's argument that "[i]n any given house in the State of Florida, one of the things you will find, one of the things one may find is a firearm." Defendant contends this may be construed as an impermissible "Golden Rule" argument.

First, the Court opines that Defendant misunderstands the meaning of a "Golden Rule" argument. "'Golden rule' arguments are arguments that invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering." *Mosley v. State*, 46 So. 3d 510, 520 (Fla. 2009). An argument does not become a "Golden Rule" argument, simply because the prosecutor uses the word "you." *See e.g., Parsonson v. State*, 742 So. 2d 858 (Fla. 2d DCA 1999). Accordingly, because the statement here did not ask the jurors to put themselves in the place of the victim, it was not an improper "Golden Rule" argument. Likewise, the statement was not an improper comment on facts outside the evidence; it was an appeal to common knowledge. *See Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982); *Shaffer v. Ward*, 510 So. 2d 602 (Fla. 5th DCA 1987). As such, because none of these comments were objectionable, counsel was not ineffective.

(Dkt. 15, Ex. 20, pp. 9-11) (footnotes omitted).

Walker does not show that the state court's decision was objectively unreasonable.

A prosecutor "must refrain from making burden-shifting arguments which suggest that the

defendant has an obligation to produce any evidence or to prove innocence." *United States*

*v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). However, the prosecutor's comments did

not shift the burden of proof in light of Walker's assertion of self-defense.[5] *See Cook v.*

*Schriro*, 538 F.3d 1000, 1020 (9th Cir. 2008) ("Prosecutors may comment on the failure of

the defense to produce evidence to support an affirmative defense so long as it does not

---

[5] The jury was instructed that self-defense was at issue. (Dkt. 15, Ex. 2, Vol. V, pp. 737-41.)

directly comment on the defendant's failure to testify."); *Jackson v. State*, 575 So.2d 181, 188 (Fla. 1991) (prosecutorial comment on the defendant's failure to produce evidence is not impermissible when the defendant has asserted an affirmative defense, such as self-defense).

Furthermore, Walker waived his right to remain silent when he talked to detectives after they advised him of his *Miranda*[6] rights and he indicated that he understood those rights. (Dkt. 15, Ex. 2, Vol. IV, pp. 562-63.) The prosecutor did not impermissibly comment on Walker's right to remain silent in light of this waiver. *See Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991) ("In light of the fact that Depree did not exercise his right to remain silent after his arrest, the prosecutor could hardly have commented impermissibly on his silence."); *Wray v. State*, 639 So.2d 621, 624 (Fla. 4th DCA 1994) ("The prosecutor's comment [about information not included in the defendant's statement] could not . . . have infringed on" his right to remain silent, because, as "the defendant was read his *Miranda* rights, he waived his right to remain silent as to his statement."). *See also United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997) (prosecutorial comments addressing a defendant's prior inconsistent statements do not make "unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.") (quoting *Anderson v. Charles*, 447 U.S. 404, 408 (1980)).

Lastly, Walker does not demonstrate that counsel had any basis to object to the

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966). Prior to questioning, a suspect must be informed, among other matters, that he has the right to remain silent and that anything he says can be used against him in a court of law. *Id.* at 479.

prosecutor's comment that "In any given house in the State of Florida, one of the things you will find, one of the things one may find is a firearm" was an impermissible golden rule argument.[7]  As the state court noted, golden rule arguments "invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering." *Mosley v. State*, 46 So. 3d 510, 520 (Fla. 2009).  Because the prosecutor's statement did not contain such remarks, the records supports the state court's conclusion that counsel did not perform deficiently in failing to object.  Furthermore, Walker does not show prejudice from counsel's failure to object to the prosecutor's statements.  Considered in the context of the trial as a whole, Walker has not shown that these comments, even if improper, resulted in a due process violation.  *See Darden*, 477 U.S. at 181.

In sum, Walker has not demonstrated that the state court's decision resulted in an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.  Consequently, Walker is not entitled to relief on Ground Three.

**Ground Five**

Walker argues that trial counsel was ineffective for "failing to provide substantial arguments" in asserting that the prosecutor did not give a race-neutral reason for striking prospective juror Stuarts, who was black.  Specifically, he claims that counsel failed to

---

[7] In his reply, Walker for the first time contends that counsel was ineffective (1) in not objecting to the prosecutor's statement about finding a firearm in any home in Florida because it was improperly made to ensure the jury found him liable as a principal and (2) in not objecting to "more than one improper comment about evidence outside the record, such as the fact that Petitioner was involved in other criminal misconduct." (Dkt. 16, pp. 5-6.)  Walker is prohibited from bringing new claims in his reply.  *See Herring,* 397 F.3d at 1342 ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citations omitted).  Additionally, these specific allegations of ineffective assistance of trial counsel are unexhausted because Walker did not present them in his postconviction motion. (Dkt. 12, Ex. 17, pp. 4-6.)  As Walker cannot return to state court to file an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), the claims are procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Walker does not show that an exception applies to overcome the default.  These claims are therefore barred from review.

argue that the prosecutor could have but did not strike white prospective jurors on the same basis that he struck prospective juror Stuarts. The state court denied this claim:

> Defendant contends that his counsel was ineffective when she failed to provide substantial arguments that the State's peremptory strike of one juror, Mr. Stuarts, was racially motivated. In this regard, Defendant asserts that counsel should have argued that there were other jurors who were similarly situated but were not removed from the jury panel.
>
> When defense counsel asked for a race-neutral reason following the strike of Mr. Stuarts, the prosecutor stated that he had two. First, the State argued that Mr. Stuart[s] had three siblings who were currently incarcerated. In this regard, the State argued that it "has a legitimate concern that such a person might feel sympathy towards the accused . . . based on having some family members who have been prosecuted and incarcerated." In addition, the State asserted that there were two other jurors, Mr. Willis and Mr. Cinaglia, who were similarly situated with Mr. Stuarts, and who would also be stricken if they reached the panel. The State also noted that it had previously stricken one juror, Ms. Twitty, because she had a daughter with a pending charge.
>
> As to the second race-neutral reason, the State argued that Mr. Stuarts had "initially indicated some ambivalence about the felony murder rule."
>
> Following a review of some case law, the defense was given an opportunity to respond, at which point defense counsel indicated that she was concerned about the strike because Mr. Stuarts was the only African-American in the jury venire; however, the State had asserted that it would also strike similarly situated jurors and there was no pattern of exclusion. Accordingly, defense counsel conceded that there was little else that she could argue.
>
> Defendant, however, now asserts that his counsel should have argued that two other jurors on the panel–Mr. Robinson and Mr. Wenzel, who were both white males–were also similarly situated. However, the Court finds that Mr. Robinson and Mr. Wenzel were not similarly situated with Mr. Stuarts. Where Mr. Stuarts had siblings who were currently incarcerated, Mr. Robinson merely had an uncle who had been incarcerated while Mr. Robinson was a young child. Mr. Robinson indicated that he did not recall much about that incarceration. In addition, Mr. Robinson indicated that he, too, had been incarcerated, but this was simply a 25-day sentence in a juvenile facility. Likewise, Mr. Wenzel had a sister and a nephew that had been incarcerated; however, those incarcerations had taken place over 8 years ago. Accordingly, Mr. Robinson and Mr. Wenzel's risk for potential bias was much less than Mr. Stuarts', who had three siblings who were currently incarcerated at the time of trial. For this reason, the Court finds that

if defense counsel had made this argument, it would have had little impact on the Court's decision to allow the strike of Mr. Stuarts, and as such, Defendant was not prejudiced by this failure.

Defendant also argues that counsel should have renewed her objection to the strike of Mr. Stuarts when the State failed to strike Mr. Willis from the jury panel, as promised. Although the State had indicated that it would, in fact, strike Mr. Willis from the panel for the same reason that it struck Mr. Stuarts, by the time Mr. Willis was empaneled, the State no longer had any strikes available. Accordingly, any argument by defense counsel based on the empaneling of Mr. Willis would have carried little weight.

In addition, the Court notes that Mr. Stuarts was not stricken solely because he had siblings who were incarcerated. The Court also allowed the strike due to his ambivalence about the felony murder rule. Therefore, even if counsel had made the arguments that Defendant now suggests, the State still would have had this second race-neutral reason to rely on. Accordingly, the Court finds that Defendant was not prejudiced based on counsel's purported deficiencies, and therefore, Ground Four is denied.

(Dkt. 15, Ex. 20, pp. 12-15) (footnotes omitted).

Striking prospective jurors solely on account of their race violates the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79 (1986). A *Batson* claim involves a three-part inquiry:

First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose." 476 U.S., at 93-94, 106 S.Ct. 1712 (citing *Washington v. Davis*, 426 U.S. 229, 239-242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. 476 U.S., at 94, 106 S.Ct. 1712; see also *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (*per curiam*).

*Johnson v. California*, 545 U.S. 162, 168 (2005).

At the third step of this inquiry, one factor that a court may consider in assessing

whether the prosecutor's reason for the strike is genuine or is a pretext for intentional discrimination is whether the strike is "based on a reason equally applicable to an unchallenged juror." *Truehill v. State*, 211 So.3d 930, 943 (Fla. 2017) (quoting *Poole v. State*, 151 So.3d 402, 410 (Fla. 2014)). The record supports the state court's conclusion that prospective jurors Robinson and Wenzel were not similarly situated to prospective juror Stuarts because they did not have relatives incarcerated at the time of trial. (Dkt. 15, Ex. 2, Vol. I, pp. 62, 76.) And as the state court found, the prosecutor did not have an available peremptory challenge when prospective juror Willis, whose brother was incarcerated at the time, was seated as an alternate juror. (*Id.*, p. 93; Dkt. 15, Ex. 2, Vol. II, pp. 269-70.) Thus, Walker has not shown that counsel performed deficiently.

Even assuming counsel performed deficiently, however, Walker has not shown resulting prejudice. The State offered a second reason for striking prospective juror Stuarts. Specifically, the State prosecuted Walker under a felony murder theory, but prospective juror Stuarts expressed hesitation about following the applicable law. The prosecutor asked about a hypothetical situation in which a person could be liable for first degree felony murder if his accomplice in a robbery pushed a victim, unintentionally causing the victim's death:

> [STATE]: [ ] Any problem about that, do you think you might be tempted to say well, that seems too severe, particularly for the guy who didn't actually push him down, and I might want to cut him a break and give him a lesser charge? Do you think you'd be in any way tempted to do that?
>
> PROSPECTIVE JUROR STUARTS: I would be, to do what's right, and to do what needed to be done, if there's a charge to be filed, and it would be my duty to do what's right.

(Dkt. 15, Ex. 2, Vol. I, p. 31.)

The court granted the prosecutor's strike of prospective juror Stuarts in part for this reason. (Dkt. 15, Ex. 2, Vol. II, p. 268.) Walker does not argue that this was not a valid race-neutral reason or that the prosecutor was not genuine in asserting it. Accordingly, in light of this additional reason, the record supports the state court's conclusion that Walker has not shown prejudice as a result of counsel's performance. Walker has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Five.

**Ground Two**

On the first day of deliberations, the jury deliberated into the evening and sent the court a note stating that they were "locked" on one count. (Dkt. 15, Ex. 2, Vol. V, p. 767.) Their note asked what would happen if they could not reach a verdict "tonight or ever" and whether they could take a break. (*Id.*) The court released the jury for the evening and told them to return the next day. (*Id.*, pp. 769-70.) Walker asserts that trial counsel was ineffective for failing to object and request an *Allen*[8] instruction. An *Allen* charge "instructs a deadlocked jury to undertake further efforts to reach a verdict." *United States v. Chigbo*, 38 F.3d 543, 544 n.1 (11th Cir. 1994).

The state court denied Walker's claim:

In his first ground, Defendant contends that his counsel was ineffective for failing to request an *Allen* charge when the jury indicated that they were deadlocked on one of the counts. As a result, Defendant asserts that his counsel "prejudiced [Defendant] against the opportunity of a mistrial or, alternatively an acquittal on count two; impaired his right to a hung jury; and waived [his] right to preserve the issue for appellate review."

In situations in which a jury has announced its inability to reach a decision,

---

[8] *Allen v. United States*, 164 U.S. 492 (1896).

the Supreme Court Committee on Standard Jury Instructions has crafted an instruction, based on the language approved of in *Allen*, that allows a jury to continue its deliberations. The instruction encourages continued deliberations "where there is a reasonable basis to believe that a verdict is possible, while cautioning jurors that they should not abandon their views just to get a verdict or to accommodate the majority." *Thomas v. State*, 748 So. 2d 970, 976 (Fla. 1999). Specifically, Standard Jury Instruction 4.1 states:

> I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.

> We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do: agree on a verdict or disagree on what the facts of the case may truly be.

> There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them for you now. That should be my problem, not yours.

> If you disagree over what you believed the evidence showed, then only you can resolve that conflict, if it is to be resolved.

> I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room. Then, taking turns, tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation of your services.

> You may now retire to continue your deliberations.

In the present case, after deliberating some time, the jury sent a note to the Court stating, "We, the jury, have agreed on one charge, but are locked on the second. What happens if we don't come to a decision tonight or ever? May we take a break?" Upon reading the question, the Court addressed the attorneys, stating, "We did send in the menus and the food should be here any minute. So we could let them take their break, or I could give them the

*Allen* charge now. Or how do you all want to proceed?" In response, the Assistant State Attorney . . . indicated that he would prefer to let the jury go home for the night. On the other hand, the defense attorney . . . stated, "It seems to me that they may be confused as to whether they can come back on one charge." The Court disagreed with the defense and made the following assertion:

> Well, right now they are saying what happens if we don't make a decision tonight. So I don't know if they are – to me, it's not sounding like we are hung yet or anything like that and I don't know that the Allen charge is quite ripe yet, but I have no problem letting them come back tomorrow or just giving them a 15-minute break or whatever. [The prosecutor] seems fine to let them go home.

Upon hearing the court's opinion, defense counsel then stated, "I'll leave it up to Your Honor."

In *Goodwin v. State*, 717 So. 2d 561, 562 (Fla. 2d DCA 1998), the Second District Court of Appeal stated that there are only two options for a trial court when a jury indicates that it is deadlocked: "(1) provide the standard instruction, or (2) declare a mistrial." In reaching this conclusion, the Second District reasoned that "[t]he trial court's failure to inform the jurors . . . that it was legally permissible for them to disagree . . . raises the very real possibility that the jurors believed that they were required to reach a verdict even if that meant compromising their positions." *Id.*

However, shortly after the decision in *Goodwin*, the Supreme Court decided *Thomas v. State*, 748 So. 2d 970 (Fla. 1999). In *Thomas*, the Supreme Court seemed to deviate from the strict requirements set forth in *Goodwin*. Instead, the Court noted that "[a]lthough it is recommended that a trial judge give an *Allen* charge when a jury is deadlocked, he is not required to do so." *Id.* at 978, n.7 (citing *State v. Bryan*, 290 So. 2d 482 (Fla. 1974)). To the contrary, "every *Allen* charge issue must be decided upon the particular facts and circumstances surrounding an individual case." *Id.* at 977. Accordingly, although a trial judge has broad discretion in the conduct of trials, an appellate court must review the totality of the circumstances surrounding the jury's deliberations to determine if the verdict has been rendered unreliable. *Id.* at 980.

Following the decision in *Thomas*, the Fourth District Court of Appeal decided *Washington v. State*, 758 So. 2d 1148 (Fla. 4th DCA 2000). In *Washington*, the trial court declined to read the jury an *Allen* charge despite the defense's request, reasoning that the jury had not been deliberating very long in comparison to the length of the trial. Accordingly, the court chose to give the

jury a couple more hours, and then it would read the *Allen* charge. Thereafter, a verdict was reached before further instructions were ever given to the jury. On appeal, the defense argued that the failure to read the *Allen* charge resulted in a coerced verdict.

Relying on *Thomas*, the Fourth District described the applicable standard of review of an *Allen* charge issue as "whether, under the totality of the circumstances, the trial judge's actions were coercive, [and] whether the facts and circumstances surrounding an individual case combined to create a serious risk of coercion." *Id.* at 1152. Accordingly, the Fourth District concluded that the totality of the circumstances in *Washington* were not unconstitutionally coercive. *Id.* at 1153. In reaching this conclusion, the Fourth District noted that the trial court had been respectful of the jurors schedules, had given them adequate breaks, and had never given them any indication that they *had* to reach a verdict. *Id.* Further, the Fourth District recognized that there had been no instruction that appeared to coerce a hasty decision and that the deliberations never broke down into hostilities. *Id.*

Ultimately, the Fourth District held that in the exercise of his or her discretion, "a trial judge may delay the giving of the *Allen* charge for a short time to allow the jurors an opportunity for further discussion without intervention or direction from the court." *Id.* at 1154. The Fourth District went on to note that "a trial judge must have some flexibility in deciding when to give the *Allen* charge. There is room in the law for a trial judge to nudge a jury in the direction of a verdict by delaying the *Allen* charge, without withholding it so long as to create improper coercion." *Id.*

Based on this review of the relevant case law, the Court concludes that counsel was not deficient for failing to request an *Allen* charge or for failing to object to the lack of [an] *Allen* charge. In this regard, the record reflects that at the time the jury indicated a potential deadlock it was nearing 7:30 p.m. on a Thursday night, and the jury had been deliberating since 11:30 a.m. – nearly eight hours. Although eight hours is undoubtedly a long period of time, it is not unexpected after a murder trial lasting several days. In addition, the Court notes that this was the jury's first indication that they were having any trouble reaching a verdict. More importantly, the note did not indicate that they would *never* reach a verdict; instead, the jurors simply asked for a break. At this point, pursuant to the jurors' own request, they were allowed to break, go home, get a full nights rest, and come back in the morning, at which point they were able to reach a verdict. Accordingly, it is clear from the totality of the circumstances that the lack of an *Allen* charge did not create a coercive environment for the jurors, and there is nothing in the record to indicate that the jury's verdict was unreliable. Therefore, the Court concludes that counsel was not deficient for failing to insist on an *Allen*

charge, and Defendant was not prejudiced. Ground One is denied.

(Dkt. 15, Ex. 20, pp. 3-7) (footnotes omitted).

The state court's ruling was not objectively unreasonable. Walker has not shown that any of his federal constitutional rights required that an *Allen* instruction be given, and this Court must defer to the state court's determination that Florida law did not require an *Allen* instruction. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("State courts are the ultimate expositors of state law," and federal courts are therefore bound by their rulings on matters of state law).

Furthermore, the record supports the state court's conclusion counsel was not ineffective for failing to object to the trial court's actions as coercive. *See Thomas v. State*, 748 So.2d 970, 976 (Fla. 1999) ("[A] trial court should not couch an instruction to a jury or otherwise act in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position."). *Cf. United States v. Douglas*, 572 Fed. App'x 876, 877 (11th Cir. 2014) (stating that the *Allen* charge itself may be inherently coercive based on "the language of the charge and the totality of the circumstances under which it was delivered" and that an instruction "which appears to give a jury no choice but to return a verdict is impermissibly coercive.") (citations omitted). The court did not suggest to the jury that they would be required to reach a verdict after their requested break, that they must rush to a decision, or that any jurors should abandon their positions. The court told the jury:

> After discussing it with the attorneys, we have decided to go to the last one first, which is to give you a break and call it for the evening. We are extremely happy that you've worked as hard as you have as diligently for the

eight hours that you've been back there as well as the days you've been listening to the testimony.

With that in mind, and I cannot stress, this is not - - because of the type of case it is, we do not put you in a hotel, you are absolutely forbidden to have any contact with anyone about this case, to discuss this case with anyone, and that includes your most intimate loved one.  During the period of time we're going to let you go home, you're not to discuss this case among yourselves. You are not allowed to read anything, and there have been both news press here, television press as well as print press.

So with that in mind, you cannot have any contact with anything about this case.  It is just for you to have the break that you've requested overnight and then start working tomorrow.  So we are going to entrust you with that responsibility.

We will ask that you be back tomorrow at the same time that we have been having you come back, at 8:55 so that at that time you can begin your deliberations again.  All right.  So with that in mind, I wish you all a nice evening.  And please just forget about this case.

(Dkt. 15, Ex. 2, Vol. V, pp. 769-70.)

Accordingly, Walker has not shown that counsel was ineffective for failing to object to the trial court's response to the jury, or that he suffered resulting prejudice.  Nor does Walker show that counsel was ineffective in failing to preserve a claim for appeal.  *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue a meritless issue).  Because Walker has not demonstrated that the state court's decision resulted in an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Two.

Any claims not specifically addressed in this Order have been determined to be without merit.

It is **ORDERED** that:

1. Walker's petition (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Walker and to close this case.

2. Walker is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Walker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Walker has not made this showing. Finally, because Walker is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

**ORDERED** in Tampa, Florida, on September 28, 2017.

Charlene Edwards Honeywell
United States District Judge


<u>Copies to</u>: Michael Walker; Counsel of Record